IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRANDON T.,

       Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security,[1]

       Defendant.

Civil Action No.
3:18-CV-1401 (DEP)

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| LACHMAN, GORTON LAW FIRM<br>P.O. Box 89<br>1500 East Main St.<br>Endicott, NY 13761-0089 | PETER A. GORTON, ESQ. |
| FOR DEFENDANT | |
| HON. GRANT C. JAQUITH<br>United States Attorney<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | ANDREEA LECHLEITNER, ESQ.<br>Special Assistant U.S. Attorney |

---

[1] Plaintiff's complaint named Nancy A. Berryhill, as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on November 19, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[2]  This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: November 26, 2019
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BRANDON T.,

                                        Plaintiff,

-v-                                     3:18-CV-1401

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

## TRANSCRIPT OF PROCEEDINGS
## BEFORE THE HONORABLE DAVID E. PEEBLES
November 19, 2019
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY:  **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY:  **ANDREA L. LECHLEITNER, ESQ.**

*Hannah F. Cavanaugh, RPR, CSR, NYACR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1           (In chambers, counsel present by telephone.  Time
2  noted:  11:25 a.m.)
3           THE COURT:  Plaintiff has commenced this proceeding
4  pursuant to 42, United States Code, Sections 405(g) and
5  1383(c)(3) to challenge a final determination by the
6  Commissioner of Social Security.
7           The background is as follows:  The plaintiff was born
8  in February of 1981.  He is currently 38 years old.  He was
9  31 years old at the time of the alleged onset of his disability
10 in September of 2012.  He stands 5'6" in height and he weighs
11 somewhere between 106 and 112 pounds.  Plaintiff has a GED.
12 He's right-handed.  He lives with his father in Endwell in a
13 house.  He also takes care of an eight-year-old daughter on
14 weekends, a daughter that was eight years old at the time of the
15 hearing in this matter.
16          The plaintiff has not worked from 2014 to 2016.  He
17 is now a home health aide for his father who suffered from a
18 traumatic brain injury.  In terms of past work, plaintiff was a
19 grocery store manager at Price Chopper from September 1998 to
20 May of 2012.  He left that position for a better paying job as a
21 thermal engineer where he worked from May of 2012 to September
22 of 2012 when he was laid off.  He also has worked as a part-time
23 cleaner from June 2013 to August 2013, and stocking shelves in a
24 grocery store at Wal-Mart in July of 2014 part-time.  He was
25 fired from that position.

1               Physically, plaintiff suffers from several issues.
2  He had a double inguinal bilateral hernia repair with mesh in
3  September of 2015 with lingering issues.  He has lumbar issues
4  with pain radiating into his knees.  The plaintiff has undergone
5  MRI testing of his lumbar area.  I've misplaced it, but I can
6  summarize by saying it shows fairly minimal issues at L4-S1 as I
7  recall.  The plaintiff also suffers from -- he has tried
8  physical therapy and takes pain medication.  He walks with an
9  antalgic gait and limps.  He also has digestive issues including
10 acid reflux, GERD, and mesenteric artery syndrome, and has also
11 suffered in the past with rectal bleeding.  Mentally, the
12 plaintiff has been diagnosed as suffering from PTSD, but
13 testified that his mental conditions do not contribute to his
14 inability to perform work functions.
15              The plaintiff has a primary physician, Dr. John
16 Bertini, and has been prescribed various medications including,
17 but not limited to, Flomax, Proscar, Imipramine, Tamsulosin,
18 Omeprazole, Hydrocodone, Oxycodone, and Gabapentin.  He cooks,
19 he showers, he can dress himself, he watches television, reads,
20 collects stamps, tries to cook daily.  He's a daily smoker, but
21 smokes one pack or less of cigarettes a day.  That's at 334,
22 473, and 317.  He uses marijuana.  That's at page 311 and 476.
23 Although, he denied the use of any illegal substances to Dr.
24 Jenouri at page 317.
25              Procedurally, the plaintiff applied for Title II and

1  Title XVI benefits protectively on July 27, 2015, alleging an
2  onset date of September 23, 2012.  He later requested
3  consideration of his applications for a closed period of
4  January 1, 2014, to December 15, 2016.  He alleges disability
5  based on behavioral problems and learning disability, superior
6  mesenteric artery syndrome, and a back injury.  That's at 164.
7         A hearing was conducted by Administrative Law Judge
8  Jeremy Eldred on November 16, 2017, to address plaintiff's
9  application for benefits.  On December 22, 2017, ALJ Eldred
10 issued an unfavorable decision finding that plaintiff was not
11 disabled at the relevant times and therefore ineligible for the
12 benefits sought.  That became a final determination of the
13 agency on October 24, 2018, when the Social Security
14 Administration Appeals Council denied plaintiff's request for
15 review of that determination.
16         The Administrative Law Judge, in arriving at his
17 decision, applied the familiar five-step sequential test for
18 determining disability.  At step one, after concluding that
19 plaintiff was insured through June 3, 2018, he concluded that he
20 had not engaged in substantial gainful activity during the
21 relevant period of January 1, 2014, to December 15, 2016, noting
22 that he had realized some income during that period but it did
23 not rise to a level sufficient to be considered substantial
24 gainful activity.
25         At step two, he concluded that plaintiff suffers from

severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including superior mesenteric artery syndrome, degenerative disc disease of the lumbosacral spine, and inguinal hernias (status post-surgical repair).

At step three, he concluded, however, that plaintiff's conditions did not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering listing 1.04.

After surveying the record evidence, ALJ Eldred concluded that plaintiff retains the residual functional capacity, or RFC, to perform sedentary work with the exception that he must alternate positions between sitting and standing every 15 to 20 minutes. Applying that RFC, ALJ Eldred concluded at step four that plaintiff is unable to perform his past relevant work.

At step five, he noted first that if a full range of sedentary work was available to the plaintiff, the Medical-Vocational Guidelines, and specifically Grid Rule 201.28, would dictate a finding of no disability. Because of the additional limitation, he consulted with the testimony of a vocational expert and concluded based on that testimony that plaintiff is capable of performing work that is available in the national economy, including as a hand packager, a production

worker, and a production inspector, and therefore was not disabled at the relevant times.

As you know, my task is limited. I must determine whether correct legal principles were applied and the determination is supported by substantial evidence. The Second Circuit in *Brault v. Social Security Administration*, 683 F.3d 443, noted that this is a significant standard. It is significantly deferential, more so than clearly erroneous. It must be supported, the determination that is, by substantial evidence defined as such evidence a reasonable mind might accept as adequate to support a conclusion. And the Second Circuit noted that this standard means that once an ALJ has found a fact, that fact can be rejected only if a reasonable fact finder would have to conclude otherwise.

In this case, the plaintiff has raised two arguments. The first concerns the adequacy of the reliance at step five on the vocational expert's testimony and specifically whether the vocational expert testified to the correct number of jobs in the DOT categories that he identified or whether he reduced a number from a larger number in some other way. The second is an attack on the rejection of Dr. Bertini's opinion concerning the plaintiff's being off task.

I'll take the second one first. Dr. Bertini, at page 338, found that plaintiff would be off task more than 15, but less than 20, percent of the time. There is no question that

HANNAH F. CAVANAUGH, RPR, CSR, NYACR
Official U.S. Court Reporter

 1  the vocational expert testified at page 486 that if that finding
 2  were adopted in the RFC, there would be no work that plaintiff
 3  would be capable of performing.  The opinion is somewhat
 4  tempered by the handwritten notation that states, this depends
 5  on physical tasks Brandon would be off task somewhat more often.
 6  The Administrative Law Judge found that to be somewhat vague,
 7  and as the Commissioner has argued, the RFC in this case is for
 8  sedentary work, which is the least physically demanding of the
 9  spectrum of jobs.  Unquestionably, a treating physician's
10  opinion is entitled to significant deference.  They are not
11  controlling, however, if they're contrary to substantial
12  evidence in the record, including opinions of other medical
13  experts.
14             In this case, the opinion was rejected in two
15  sentences of the Administrative Law Judge's decision.  At page
16  21, the ALJ stated, I do not adopt the time off task assessment
17  in Dr. Bertini's report because the opinion is speculative and
18  not well supported.  Dr. Bertini noted that the claimant's time
19  off task depends on vague factors.  I would've liked to have
20  seen a more robust discussion of his reasoning, however, as the
21  Commissioner argued, prior to making that statement, the
22  Administrative Law Judge did examine and analyze plaintiff's
23  daily activities and the consultative opinions of record,
24  including significantly Dr. Jenouri's, to which he gave
25  significant weight.  Dr. Jenouri examined the plaintiff.  His

opinion is silent on whether there would be any time off task. I note, also, that there was conservative treatment. Plaintiff has significant ADLs, or activities of daily living. There are relatively modest MRI findings.

I went through carefully Dr. Bertini's notes of September 3, 2015. He notes moderate back pain and abdominal moderate to severe. That's at 303 and 327.

October 5, 2015: Hernia pain somewhat improved with surgery, 299 and 323. He indicated pain zero on a ten scale at 300.

November 9, 2015: Abdominal and back pain moderate. Plaintiff exercises and goes to PT, 449 and 451.

December 9, 2015: Abdominal pain ten out of ten, 445, but December 17, 2015, abdominal pain eight out of ten, intermittent but severe. That's at 440.

January 18, 2016: Back, eight out of ten, but he helped his father out of a wheelchair, his injections are on hold, and physical therapy has stopped. That's at 436.

February 12, 2016: Back, moderately severe, that's 432, will set-up injections and refer to physical therapy.

April 12, 2016: Abdominal pain seven out of ten and back problem is resolved. That's at 428.

June 24, 2016: Plaintiff complains only of abdominal pain, seven out of ten. That's at 424.

August 12, 2016: Abdominal pain ten out of ten, back

pain nine out of ten.

August 31, 2016:  Plaintiff only complains of shoulder pain, 415.

September 12, 2016:  Plaintiff only complains of eye problems.  That's at 411.

On October 6, 2016, and again November 30, 2016: Abdominal pain ten out of ten, no relief with Gabapentin. That's at 403 and 407.

February 28, 2017:  Abdominal pain seven out of ten, no mention of back pain.  That's at 398.

April 25, 2017:  Abdominal pain seven out of ten, moderate back pain, relieved by medications and stretching, 394.

May 25, 2017:  Back pain stable, that's at 390, relieved by drugs.

So when you look at Dr. Bertini's notes, you look at Dr. Jenouri's silence, you factor in the conservative treatment, the modest MRI findings, I think that the rejection of that portion of Dr. Bertini's opinion is supported by substantial evidence.  I agree with the Commissioner that under *Smith* uncontradicted medical opinions can properly be discounted.  I am familiar with *Estrella* and, as I indicated, I would have rather seen a fuller explanation in this case, but I cannot say that the determination is not supported by substantial evidence.

The step five issue raised by the plaintiff was interesting.  Unquestionably, at step five it is the

1  Commissioner that bears the burden of proof.  I recognize that
2  the Dictionary of Titles, or DOT, is much more granular than the
3  SOC codes.  The DOT, unfortunately, does not provide for a
4  number of jobs, so a vocational expert has to, in his or her
5  expertise, map or somehow correlate DOT to the SOC.
6      In this case, the vocational expert explained, pages
7  47 to 48, how he arrived at his job numbers.  At page 47, after
8  identifying based on a hypothetical that did include the
9  sit/stand option, he identified three jobs the plaintiff could
10 still perform and gave a number of jobs that appear to relate to
11 those three jobs.  At page 47, he found 14,400 jobs as a hand
12 packer in the national economy; as a production worker, 19,500;
13 as a production inspector, 8,300.  The questioning, I will
14 grant, is susceptible of some contradictory interpretations.  In
15 my view, the better interpretation suggests that he did, in
16 fact, utilizing his expertise, reduce the numbers from the SOCs
17 to give numbers that correlate to the three positions that he
18 concluded the plaintiff is capable of performing notwithstanding
19 his limitations.
20     In *Brault,* the Second Circuit very clearly indicated
21 it is sufficient to rely on the expertise of a vocational
22 expert.  The plaintiff did have the opportunity through his
23 counsel to flush things out further on cross examination.  He
24 did stipulate to the vocational expert's expertise.  There were
25 no objections registered.  That's at page 45 to 46.

            I think *Vandermark* is helpful.  Interestingly, plaintiff's counsel's office is familiar with the issue because it represented the plaintiff in that case and *Rosa*, two of the cases that deal with this issue.  In my view, the ALJ reasonably relied on the expertise of the vocational expert.  The context, again reading 47 and 48, to me indicates clearly that the vocational expert used his expertise to call out the number of jobs available in these three categories.

            Under *McIntyre*, I don't believe he was required to provide more specifics.  I think *Peach,* a case cited by the plaintiff, is inapposite because the focus on that case was the sufficiency of numbers of jobs in the DOT titles cited.  And similarly in *Rosa*, the vocational expert David Festa could not say the number of jobs in the two categories relied on.  Again, I think it's inapposite.  In my view, the evidence was sufficient to carry the Commissioner's burden at step five.

            So in conclusion, I find that the determination results from application of proper legal principles and is supported by substantial evidence.  I will therefore grant judgment on the pleadings to the defendant.

            Thank you both for excellent presentations and an interesting case.  I hope you have a good day.

            MS. LECHLEITNER:  Thank you, your Honor.

            (Time noted:  11:46 a.m.)

12

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5            I, HANNAH F. CAVANAUGH, RPR, CSR, NYACR, Official
 6   U.S. Court Reporter, in and for the United States District Court
 7   for the Northern District of New York, DO HEREBY CERTIFY that
 8   pursuant to Section 753, Title 28, United States Code, that the
 9   foregoing is a true and correct transcript of the
10   stenographically reported proceedings held in the above-entitled
11   matter and that the transcript page format is in conformance
12   with the regulations of the Judicial Conference of the United
13   States.
14
15            Dated this 22nd day of November, 2019.
16
17            x_Hannah F. Cavanaugh_____
18              HANNAH F. CAVANAUGH, RPR, CSR, NYACR
19              Official U.S. Court Reporter
20
21
22
23
24
25
```